**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**BLINDER ROBINSON & CO., INC. et al., Defendants.**

**Civ. A. No. 80–M–1125.**

United States District Court, D. Colorado.

April 24, 1981.

Richard S. Vermiere and Rodney K. Vincent, Securities and Exchange Commission, Denver, Colo., for plaintiff.

Marc N. Geman, Fishman & Geman, P.C., Denver, Colo., for defendants Blinder, Robinson & Co., Inc. and Meyer Blinder.

Wilfred Friedman, Friedman & Shaftan, New York City, Jay S. Horowitz, Denver, Colo., for defendant American Leisure Corp.

Howard Schiffman, Seymour Glanzer, Dickstein, Shapiro & Morin, Washington, D. C., Richard N. Stuckey, Keene, Musinger & Stuckey, Denver, Colo., for defendants Nathan S. Jacobsen and Irwin S. Lampert.

Melvile Bowen, Abramson & Fox, Chicago, Ill., William Moran, Moran & Gold, P.C., Miami, Fla., Lance M. Sears, Tegtmeier, Bennett & Sears, P.C., Colorado Springs, Colo., for defendants Scope, Inc. and Leon Joseph.

## MEMORANDUM OPINION

MATSCH, District Judge.

This is a civil enforcement proceeding brought by the Securities and Exchange Commission (SEC) pursuant to § 20(b) of the Securities Act of 1933, 15 U.S.C. § 77t(b), and § 21(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(e) for injunctive and ancillary equitable relief upon claims of violations of the substantive provisions of those statutes in connection with a public offering of units of common stock and warrants of American Leisure Corp. (ALC). Without admitting those allegations, some of the defendants entered into a settlement agreement involving the offer of common stock and promissory notes to shareholders and former shareholders of ALC in exchange for a release of claims by those who accept the offer. The plaintiff and settling defendants sought court approval of that settlement to obtain the exemption from the registration requirements of the 1933 Act contained in § 3(a)(10), 15 U.S.C. § 77c(a)(10) reading as follows:

> Any security which is issued in exchange for one or more bona fide outstanding securities, claims or property interests, or partly in such exchange and partly for cash, where the terms and conditions of such issuance and exchange are approved, after a hearing upon the fairness of such terms and conditions at which all persons to whom it is proposed to issue securities in such exchange shall have the right to appear, by any court, or by any official or agency of the United States, or by any State or Territorial banking or insurance commission or other governmental authority expressly authorized by law to grant such approval;

After preliminary approval of the settlement, a hearing was set to consider the fairness of the agreement and notice of that hearing was mailed to all persons to whom the settling parties proposed to issue securities. That notice included a summary of the terms and conditions of the settlement agreement and invited the appearance at the hearing by all affected persons, with or without counsel, and also provided for the submission of written objections prior to the hearing. Only a few written objections were received and relatively few persons attended the hearing.

At the hearing held on April 10, 1981, the settling defendants presented evidence concerning the use of the funds obtained from the public offering and detailed the plans for the construction and operation of a hotel-casino in Atlantic City, New Jersey. Participation in that development was and is the business of ALC and equity financing for the development was the primary purpose of the public offering which was the subject of the complaint in this case. The evidence included copies of contracts, architectural drawings, and information concerning progress in obtaining the approval of

regulatory authorities having jurisdiction, as well as information concerning prospects for business operations. All persons in appearance were given an opportunity to cross-examine the witnesses and to consider the evidence.

This settlement was specifically accepted by the Securities and Exchange Commission, as evidenced by a letter from the Secretary, received in evidence.

There is no statutory definition of "fairness" as used in Section 3(a)(10) and there is no general guidance suggesting the criteria for the court to consider in determining the question of approval. It is important to distinguish the settlement proposed here in the context of an enforcement proceeding from other kinds of cases in which the exemption from registration provided in Section 3(a)(10) is also applicable. The SEC is not here as the representative of a class of investors claiming relief. Accordingly, this court is not confronted with measuring the adequacy of the relief obtained by comparing the value of the securities to be issued with the claims of loss, as would be true in the settlement of a class action or a derivative action by shareholders under Rules 23(e) and 23.1 of the Federal Rules of Civil Procedure. *See* 3 *Newberg on Class Actions* § 5600a, at 494 & n.20 (1977) (citing class actions); 7A C. Wright & A. Miller, *Federal Practice & Procedure*, § 1839, at 431–32 & n. 87 (1970) (citing derivative suits).

Indeed, the settlement specifically provides that those persons who do not wish to accept the offer from the settling defendants are not foreclosed from pursuing private claims for relief. Accordingly, each of the offerees will have an opportunity to evaluate the proposal on an individual basis.

This proceeding should also be contrasted with the exemption from registration for securities issued in a corporate reorganization under former Chapter X of the Bankruptcy Act, requiring a finding that the reorganization plan is fair, equitable and feasible. 11 U.S.C. §§ 574 and 616. *See 6 Collier on Bankruptcy* (14th Ed.) ¶ 7.37. There, the necessary inquiry on "feasibility"

requires valuation of the debtor's business as a going concern and the reasonableness of the prospects for future financial success of the enterprise. *6A Colliers on Bankruptcy,* ¶ 11.07.

 This is a situation in which the value of the stock and notes to be issued must be considered speculative because the underlying business is in a developmental stage. I have made no attempt to determine value, now or in the future, because the fairness of the offer does not depend upon it. The factors which are to be considered include: (1) the recommendations of counsel; (2) the scope of the discovery record as an indicator of the adequacy of the investigation into the facts; (3) the apparent alternatives to the settlement; (4) the nature and volume of responses from those receiving notice of the hearing; and (5) the opportunity for direct participation in the process of obtaining full disclosure.

Counsel for the parties to this settlement, as officers of the court, have summarized the negotiating history in their statements at the hearing. Additionally, judicial notice was taken of earlier adversary proceedings in this case. There is nothing to suggest any collusion in the preparation and submission of the agreement. To the contrary, it is apparent that these attorneys have represented the interests of their clients aggressively throughout this case; that the settlement is the product of arms-length bargaining; and that their recommendation that this court accept this agreed resolution of the disputed issues results from their exercise of professional judgment as to what is in the best interests of those for whom they appeared.

There has been time for a complete investigation into the facts in this case and it is apparent that counsel have made full use of discovery procedures. I have not examined the discovery record because I will be the trier-of-fact on the issues between the remaining parties and it would be inappropriate to obtain detailed information before the trial. It is for the same reason that I have avoided asking counsel to give any opinions concerning the relative merits of

the positions taken on behalf of the settling parties while they were in an adversary posture.

The alternative to this settlement suggested by those who have made objections is a full refund of the public investment. That would require the liquidation of the business entity involved and the result would be only a partial recovery. There is not enough cash for complete restitution. Additionally, there would be no future business activity in developing the hotel-casino and the value of the expenditures made in obtaining regulatory approval and other such capital asset values would be lost. The litigation costs involved in resisting such relief would also be a substantial strain on the resources of the settling defendants, thereby further reducing the value of a recovery if the plaintiff ultimately prevailed.

Approximately 11,000 notices of the fairness hearing were mailed and only 15 responses were received. That lack of response is, in itself, some indication of the perception of fairness among those who are to be offerees. The shareholders who appeared at the hearing were given an opportunity to inquire of the witnesses and to state their position. Those who made statements were in support of the settlement.

There has been a full and fair opportunity for all affected persons to participate directly in the process of obtaining full disclosure of the matters involved in this settlement agreement. The mailed notices gave an accurate and adequate summary of the terms and conditions of the settlement. The settlement documents have been available for public inspection in the office of the Clerk. No formal method of making objections was required. Participation at the hearing was invited, without limitation, and the settling defendants appeared at the hearing prepared to respond to any relevant inquiries and to produce relevant documents.

In summary, the approach to the determination of "fairness" and approval of this settlement agreement, invoking the exemption from registration provided by Section 3(a)(10), is consistent with recognition of the purpose of the Securities Act of 1933 to protect investors by promoting full disclosure of the information believed to be necessary to the making of informed investment decisions. *S.E.C. v. Ralston Purina Co.*, 346 U.S. 119 at 124, 73 S.Ct. 981 at 984, 97 L.Ed. 1494 (1952). The fairness hearing here has been the functional equivalent of the full disclosure which would be provided in an appropriate prospectus and registration statement. Those receiving the offer under the terms of the settlement agreement have had a full and fair opportunity to learn everything required to make their decision. Accordingly, it must be concluded that they will act in awareness of the risks involved in acceptance and the alternatives attendant upon a decision to decline the offer. Nothing more could be accomplished by registration and nothing more is required in the determination that this settlement should be approved. It is

ORDERED, that this memorandum opinion shall be filed as an amplification of the bench ruling made on April 10, 1981 and the final order of approval entered on April 14, 1981.