**CHAPEL INVESTMENTS, INC., Plaintiff,**

v.

**CHERUBIM INTERESTS, INC., Defendant.**

**Civil Action No. 4:16–CV–00172–O**

United States District Court, N.D. Texas, Fort Worth Division.

Signed April 14, 2016

Jesse Z. Weiss, Ryan Shelton, Hohmann, Brophy & Shelton, PLLC, Austin, TX, for Plaintiff.

Marcus C. Marsden, Jr., The Colaneri Firm, P.C., Arlington, TX, for Defendant.

## ORDER

Reed O'Connor, UNITED STATES DISTRICT JUDGE

The Joint Motion for Approval of Stipulation of Settlement of All Claims (Doc. 7) (the "Motion") of Plaintiff Chapel Investments, Inc. ("Plaintiff") and Cherubim Interests, Inc. ("Defendant") came on for hearing on April 14, 2016 before the Hon-

orable Reed O'Connor, U.S. District Judge. The Court having been presented with a Stipulation of Settlement of all Claims (the "Stipulation," Exhibit 1 to the Motion) between Plaintiff and Defendant, considered the Motion and Stipulation, the Declaration of Patrick Johnson ("Johnson Decl.," Exhibit 2 to the Motion), and arguments of counsel, conducting a hearing on the Motion, and good cause appearing therefor, the Court grants the Motion for the reasons explained below.

### Jurisdiction and Venue

This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332(a)(2) because there is complete diversity of citizenship between Plaintiff, a Belize international business company, and Defendant, a Nevada corporation, and Plaintiff seeks damages in excess of $75,000. Complaint, Doc 1. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant's headquarters is within this district. Complaint.

### Findings of Fact

Plaintiff alleges that defendant Cherubim Interests, Inc. ("Defendant"), a public company, owes Plaintiff a debt in the amount of $100,000.00 plus interest. *See* Complaint, Doc. 1. Plaintiff and Defendant have reached agreement as to all terms of settlement of this action. *See* Stipulation for Settlement, Exhibit 1. (the "Stipulation"). Because the parties have agreed to settle Plaintiff's claims against Defendant in exchange for the issuance of unregistered shares of Defendant's stock to Plaintiff, Court approval is required under Section 3(a)(10) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77c(a)(10).

As discussed below, Section 3(a)(10) is an exception to the securities laws for settlements that are approved by a court. The exception applies if the court determines that the settlement is fair, following a hearing on the terms and conditions of the proposed exchange, at which the person to receive the stock has the right to appear. In this case, the only person to receive shares from the Section 3(a)(10) exchange is Plaintiff, who, together with Defendant, asks the Court for approval of the terms of the Stipulation for Settlement, filed concurrently herewith.

### A. The Parties

Plaintiff is a sophisticated offshore institutional investor, highly experienced in the business of buying and selling securities, including multiple transactions such as that proposed here. *See* Stipulation, Exhibit 1, p.6, ¶ 12(a). Plaintiff is the holder of an outstanding loan to Defendant in the principal amount of $100,000.00 (the "Claim") plus interest, attorney fees, and costs. *See* Complaint, Doc. 1. The underlying documentation supporting the Claim is attached as an exhibit to the Complaint. *See* Complaint, Doc. 1, Exhibit 1. Plaintiff and its U.S. representatives have utilized their knowledge, sophistication, and experience in business and financial matters, and have fully evaluated the merits and risks of entering into the Stipulation. *See* Stipulation, Exhibit 1, pp.6–7, ¶ 12(b). Plaintiff is able to bear the economic risk of entering into the Stipulation and is able to afford a complete loss of its investment. *See* Stipulation, Exhibit 1, p.7, ¶ 12(c).

While fully aware of the significant risks of exchanging debt for the common stock of a small public company in financial difficulty, Plaintiff is willing to accept that risk provided that Defendant abides by the terms of the Stipulation. If Defendant is successful and its business performs well, there is the potential for Plaintiff to fully recoup its investment and possibly generate a substantial return.

Defendant is a real estate investment company based in Bedford, Texas, that invests in commercial buildings and single and multifamily housing. *See* Declaration of Patrick Johnson, ("Johnson Decl."), Exhibit 2, ¶ 3. Defendant's stock is publicly traded on the OTC Pink marketplace under the ticker symbol "CHIT." Defendant is a very small company, with a market capitalization well under a million dollars, and a current stock price of only $0.0001 per share. Like many micro-cap public companies whose shares trade on the over-the-counter market, trading in Defendant's stock is volatile and unpredictable. *See* Johnson Decl., Exhibit 2, ¶ 8. Over the last year, the trading price and volume for Defendant's stock have fluctuated substantially. *See* Johnson Decl., Exhibit 2, Ex. A (chart of Defendant's trading price and volume over the prior year).

Defendant concedes that the Claim held by Plaintiff is bona fide outstanding, and that Defendant is obligated to pay the full amount of the Claim without counterclaim or right of offset. *See* Johnson Decl., Exhibit 2, ¶ 5. Defendant's board of directors has determined that the terms of the Stipulation are fair to Defendant, and in the best interests of its stockholders. *See* Johnson Decl., Exhibit 2, ¶ 10.

## B. The Terms of the Stipulation

The parties and their attorneys and investment advisors have worked cooperatively together to structure an advantageous settlement. *See* Motion at 3. The proposed Stipulation has benefits and risks for each party. *See id.* Because of its low stock price and the relative size of the debt, Defendant may have to issue a large number of its shares to satisfy the Claim. *See id.* However, the Stipulation will allow Defendant to remove debt from its balance sheet and avoid a judgment it cannot afford by paying Plaintiff in stock instead of cash. *See id.* at 3–4. Existing shareholders will be better off owning a lower percentage of an entity with an improved chance to continue as a going concern, than their existing percentage of a corporation that may be forced into bankruptcy or out of business. *See id.* The proposed exchange of debt for equity is therefore highly accretive, and beneficial to the overall enterprise and its stakeholders. *See id.* at 4.

Plaintiff will bear significant investment risk by agreeing to the Stipulation. Motion at 4. Plaintiff is agreeing to exchange debt, which has a liquidation preference above all equity, for common stock which sits at the bottom of the capitalization table. *See id.* Plaintiff's ability to recoup cash will be entirely dependent on its ability to sell the shares it receives in an uncertain and illiquid market. *See id.* However, the Stipulation will provide Plaintiff with at least the opportunity to recoup its full investment and earn a return, possibly even a high return, particularly if Defendant's stock price increases. *See id.* Plaintiff will receive a number of shares that are currently priced at more than the Claim amount which, in theory, it should be able to sell for more than the amount of the Claim. *See* Stipulation, Exhibit 1, ¶ 6. The Stipulation also contains a pricing adjustment formula over a defined period, which provides for a high degree of theoretical protection. *See* Stipulation, Exhibit 1, ¶¶ 6–10. If Defendant's stock price declines over time, it will be required to issue Plaintiff more shares. *Id.* However, in the real word, it may be difficult and perhaps impossible for Plaintiff to sell enough shares at any price to recoup its investment. As an equity investor, Plaintiff's return will be wholly dependent on the market for Defendant's stock. *See* Motion at 4.

The parties have agreed to settle the claims in this action in exchange for issuance of Defendant's stock to Plaintiff, subject to obtaining the Court approval required by Section 3(a)(10) of the Securities Act of 1933, as amended, 15 U.S.C. § 77c(a)(10), and the comparable provision of Nevada state "blue sky" law, Nevada Revised Statutes § 90.280(6)(c). The Court's approval of the proposed settlement is necessary because the settlement involves Defendant paying Plaintiff with unregistered shares of Defendant's common stock. As discussed further below, the Securities Act and its Nevada equivalent provide for an exemption to an issuer's registration requirement in certain situations, including where, as here, a court determines that the settlement is fair. *See Oceana Capitol Grp. Ltd, v. Red Giant Entertainment, Inc.,* No, 3:15–cv–428, 150 F.Supp.3d 1219, 1221–22, 2015 WL 9239767, at *2 (D.Nev. Dec. 17, 2015); *ScripsAmerica, Inc. v. Ironridge Global LLC,* 56 F.Supp.3d 1121, 1132, fn. 16 (C.D.Cal.2014); *see also* Johnson Decl., ¶ 9.

Each party has stipulated that the terms of the proposed settlement are fair and reasonable, no party has objected, and indeed Plaintiff and Defendant jointly ask that the stipulation be approved by the Court.

### Conclusions of Law

#### A. *The Proposed Settlement is Fair*

Section 3(a)(10) provides that, "any security which is issued in exchange for one or more bona fide outstanding securities, claims or property interests" is exempt from application of the federal securities laws, "where the terms and conditions of such issuance and exchange are approved, after a hearing upon the fairness of such terms and conditions at which all persons to whom it is proposed to issue securities in such exchange shall have the right to appear, by any court." 15 U.S.C. § 77c(a)(10).

The statute is routinely taken advantage of by public companies to settle outstanding debts in exchange for stock. *See Oceana Capitol,* 150 F.Supp.3d at 1223, 2015 WL 9239767, at *3 ("The Section 3(a)(10) exemption is often used to effectuate settlements of claims against public company defendants."); *ScripsAmerica,* 56 F.Supp.3d at 1132, fn. 16 ("Because the shares were unregistered, defendant and plaintiff had to obtain court approval under state and federal securities laws before a transfer of the stock could take place."); *In re Bd. of Directors of Multicanal S.A.,* 340 B.R. 154, 160 (Bankr.S.D.N.Y.2006) ("the securities to be exchanged for the notes in the Multicanal APE could be exempt from registration under § 3(a)(10) of the Securities Act upon the finding of 'fairness' required under that section"); *In re Tripath Tech., Inc, Sec. Litig.,* No. C 04 4681 SBA, 2006 WL 1009228, at *2 (N.D.Cal. Apr. 18, 2006).

Such exchanges, like the one at issue here, allow the defendant companies to preserve their operating cash, while removing the potential liability of pending claims. *See, e.g., In re Lloyd's American Trust Fund Litig.,* No. 96 Civ.1262 RWS, 2002 WL 31663577, at *8 n. 4 (S.D.N.Y. Nov. 26, 2002); *In re Rite Aid Corp. Sec. Litig.,* No. 2:99–CV–1349 SD, 2001 WL 35963382, at *2 (E.D.Pa. Aug. 16, 2001); *Adams v. Amplidyne, Inc.,* No. CIV.A. 99–4468(MLC), 2001 WL 34885324, at *2 (D.N.J. Aug. 15, 2001); *Manners v. American Gen. Life Ins. Co.,* No. Civ.A. 3–98–0266, 1999 WL 33581944, at *6 (M.D.Tenn. Aug. 11, 1999); *Turabo Medical Center v. Beach,* No. 96–2250(DRD), 1997 WL 33810581, at *3 (D.Puerto Rico Aug. 13, 1997); *Continental Assur. Co. v. Macleod-Stedman, Inc.,* 694 F.Supp. 449, 469 (N.D.Ill.1988).

■ Because the Section 3(a)(10) exemption falls "entirely within the purview of the long-established court system," the Securities & Exchange Commission is not required to be named as a party in the proceeding or given notice of the hearing. *See Oceana Capitol,* 150 F.Supp.3d at 1223, 2015 WL 9239767, at *2; 78 CONG. REC. 8668 (1934) ("the primary purpose of the amendment [to Section 3(a)(10)] is to make clear that the exemptions accorded extend beyond the particular transactions therein covered, to the security itself."); *see also Staff. Legal Bulletin No. 3a (Cf)* (June 18, 2008), SEC Release No. SLB–3A, 2008 WL 6034958 ("The Section 3(a)(10) exemption is available without any action by the Division [of Corporation Finance] or the [Securities & Exchange] Commission.").[1] The holders of outstanding claims are protected by court supervision of the conditions of the issuance of their new securities. *See* 78 CONG. REC. 8668 (1934); *Oceana Capitol Group,* 150 F.Supp.3d at 1221–23, 2015 WL 9239767, at *2. For the exemption to apply, the court must:

(1) Find that the person to receive shares holds securities, claims or property interests that were outstanding prior to the hearing,

(2) Conduct a fairness hearing at which all persons to whom the securities will be issued has the right to appear and be heard, and

(3) Find that the terms and conditions of the proposed exchange are fair.

*Oceana Capitol,* 150 F.Supp.3d at 1221–24, 2015 WL 9239767, at *2–3; *Multicanal,*

340 B.R. at 161. If the Court makes the required determinations, the exemption applies. *Id.*

"By the requirement that securities, claims and property interests must be bona fide outstanding, the new section will provide protection against resort to the exemption for the purpose of evading the registration requirements of the act." *See Oceana Capitol,* 150 F.Supp.3d at 1223, 2015 WL 9239767, at *2, quoting 78 CONG. REC. 8668 (1934) (statement of Senator Duncan Fletcher).

■ The primary consideration to the determination of "fairness" under Section 3(a)(10) is "'promoting full disclosure of the information believed to be necessary to the making of informed investment decisions.'" *Oceana Capitol,* 150 F.Supp.3d at 1224, 2015 WL 9239767, at *4 (quoting *Sec. & Exch. Comm'n v. Ralston Purina Co.,* 346 U.S. 119, 124, 73 S.Ct. 981, 97 L.Ed. 1494 (1953)); *Sec. & Exch. Comm'n v. Blinder Robinson & Co.,* 511 F.Supp. 799, 802 (D.Colo.1981). This is particularly true where Plaintiff is "a sophisticated investor, not in need of the protections afforded by registration." *Ackerberg v. Johnson,* 892 F.2d 1328, 1337 (8th Cir.1989); *see Berckeley Inv. Grp., Ltd. v. Colkitt,* 455 F.3d 195, 215 (3d Cir.2006) ("shares were sold to a single sophisticated investor"). The Court may find that a "negotiated agreement between sophisticated commercial parties is fair," when Plaintiff has obtained the information it requires to make an investment decision, has conducted its own

1. The Court is not required to give *Chevron* deference to this bulletin because it is prepared by SEC staff, and the Section 3(a)(10) exemption falls outside the purview of the SEC. *See Oceana Capitol,* 150 F.Supp.3d at 1223–24, 2015 WL 9239767, at *3; *Argentinian Recovery Co. LLC v. Bd. of Directors of Multicanal S.A.,* 331 B.R. 537, 550 (S.D.N.Y. 2005). Congress delegated no authority to the SEC regarding Section 3(a)(10), which is to be implemented and interpreted solely by the courts. *Id.* However, it is worth noting that the SEC staff has acknowledged that the exemption is available without any involvement by the SEC.

independent analysis of the market for Defendant's securities, and both parties understand the upside potential and the downside risks inherent in the Stipulation. *Oceana Capitol,* 150 F.Supp.3d at 1224–25, 2015 WL 9239767, at *4; *Blinder Robinson,* 511 F.Supp. at 802.

 All of the requirements for application of the exemption are satisfied here. First, Defendant's shares will be exchanged in satisfaction of its debt to Plaintiff, which is bona fide outstanding. *See* Complaint, Exhibit 1; Johnson Decl., Exhibit 2, ¶ 5. The second requirement will be satisfied if the Court holds "a hearing on the fairness of the exchange at which all persons to whom the securities will be issued pursuant to such exchange may appear and be heard," because Plaintiff is the only person who will receive stock from Defendant in the exchange and will be represented by counsel at the hearing. *See Oceana Capitol,* 150 F.Supp.3d at 1223–24, 2015 WL 9239767, at *3. Third, as to "a finding of fairness," *id.,* the Stipulation represents a negotiated agreement between sophisticated commercial parties represented by competent counsel. *See* Stipulation, Exhibit 1, p.8, ¶ 17. Both Plaintiff and Defendant have been advised of and fully understand the benefits and risks of the contemplated exchange. *Id.* These factors are sufficient for the Court to find that the Stipulation is fair. *See Oceana Capitol,* 150 F.Supp.3d at 1224–25, 2015 WL 9239767, at *4; *Blinder Robinson,* 511 F.Supp. at 802. Accordingly, the terms and conditions of the Stipulation and the proposed exchange of shares will be approved as fair.

## B. *Registration of the Shares is Not Required*

No registration *is* required under Section 5 of the Securities Act, 15 U.S.C. § 77e, for the Court to approve the exchange as fair, because shares issued in a court-approved exchange are completely exempt from the securities laws under Section 3(a)(10), 15 U.S.C. § 77c(a)(10). *See Oceana Capitol,* 150 F.Supp.3d at 1224–25, 2015 WL 9239767, at *4; *Multicanal,* 340 B.R. at 162; *In re Trade Partners, Inc. Inv'r Litig.,* No. 1:07–MD–1846, 2008 WL 4911797, at *5 (W.D.Mich. Nov. 13, 2008) ("the court determines that the terms and conditions of the issuance of common stock of Macatawa Bank Corporation in this case are fair and that the common stock issued pursuant to the Agreement will be exempt from registration under section 3(a)(10) of the Securities Act of 1933"). Indeed, the very purpose of fairness hearings is to, "provide a fast and cost-efficient alternative to federal registration." *See Oceana Capitol,* 150 F.Supp.3d at 1223, 2015 WL 9239767, at *3; 15 U.S.C. § 77c(a)(10); *McKim v. NewMarket Techs., Inc.,* 370 Fed.Appx. 600, 606 (6th Cir.2010) ("exemption pursuant to Section 3(a)(10) of the Securities Act, 15 U.S.C. § 77c(a)(10), would make the unregistered shares immediately tradable").

 If the Court approves the exchange as fair, the "stock can be sold immediately, without restriction." *See In re Trade Partners,* 2008 WL 4911797, at *3; *In re Tripath Tech.,* 2006 WL 1009228, at *2 ("The Settlement Shares are to be issued in exchange for bona fide outstanding claims; all parties to whom it is proposed to issue such securities have had the right to appear at the hearing on the fairness of the Settlement; and the Settlement Shares are therefore unrestricted and freely tradeable exempted securities pursuant to Section 3(a)(10) of the Securities Act of 1933, 15 U.S.C. § 77c(a)(10)."); *Adams,* 2001 WL 34885324, at *2 (same); *In re Rite Aid,* 2001 WL 35963382, at *2 (same). Accordingly, if the Court approves the proposed settlement as fair, it

should not be necessary for the parties to incur the delay and expense of registration in addition to court approval.

### C. *Registration of the Parties Is Not Required*

#### 1. Section 3(a)(10) Participants Are Exempt from Registration.

No registration by Plaintiff or Defendant is required under Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78o(a), for the Court to approve the exchange as fair, because Exchange Act requirements "do not apply to participants in court-approved Section 3(a)(10) exchanges." *Oceana Capitol,* 150 F.Supp.3d at 1225, 2015 WL 9239767, at *4; *see Brucker v. Thyssen–Bornemisza Europe N.V.,* 424 F.Supp. 679, 691–92 (S.D.N.Y.1976) *aff'd sub nom. Brucker v. Indian Head, Inc.,* 559 F.2d 1202 (2d Cir.1977) (requirements of Exchange Act "were not meant to apply to judicially approved settlement agreements," because investors are "more than adequately protected by the procedures followed in the judicially-approved settlement"); *Metlyn Realty Corp. v. Esmark, Inc.,* 763 F.2d 826, 833 (7th Cir.1985) ("The securities laws were designed to handle transactions in markets" and "do not apply" to the course of litigation or "securities issued in an exchange transaction approved by a court" because litigation "contains its own safeguards" including "the supervision of a judge"); *see also Gilbert v. Bagley,* 492 F.Supp. 714, 731 (M.D.N.C.1980) ("supervision of the court afforded an extra measure of shareholder protection").

When the Exchange Act was first adopted in 1934, Section 3(a)(10) was amended in light of "complaints that the present [1933] act is too drastic, and is interfering with business," in order to "substantially extend the present provi-sions in order to cover various forms of readjustments of the rights of holders of outstanding securities, claims and property interests, where the holders will be protected by court supervision of the conditions of the issuance of their new securities." *Oceana Capitol,* 150 F.Supp.3d at 1223, 2015 WL 9239767, at *2; *see* 78 CONG. REC. 8668 (1934); *Multicanal,* 340 B.R. at 162. The legislative history evinces a Congressional intent that the statute be broadly construed to exempt all aspects of a court-approved exchange, from both the Securities Act pursuant to which it was originally adopted as well as the Exchange Act pursuant to which it was amended. *See Oceana Capitol,* 150 F.Supp.3d at 1221–23, 2015 WL 9239767, at *2; 78 CONG. REC. 8668 (1934) ("The primary purpose of the amendment is to make clear that the exemptions accorded extend beyond the particular transactions therein covered, to the security itself.").

Requiring parties to court-approved exchanges to register under Section 15(a) would undermine the legislative purpose by eliminating the primary benefit of the Section 3(a)(10) exemption, which is that the issued shares are freely tradeable exempted securities that may be immediately resold without restriction. *See Oceana Capitol,* 150 F.Supp.3d at 1223–24, 2015 WL 9239767, at *3; *Guerra De Chapa v. Allen,* 119 F.Supp. 129, 132 (S.D.Tex.1954) ("A court should harmonize and reconcile a statutes, if possible, so as to avoid conflicts."); *see also Tripath Tech.,* 2006 WL 1009228, at *2; Charles J. Johnson & Joseph McLaughlin, *Corporate Finance and the Securities Laws* § 1.05[E] (4th ed. 2006 & Supp.2013) (Section 3(a)(10) exemption avoids the time and expense of registering shares and allows for the issuance of shares that are not restricted as they would have been if issued in a private placement). Here, requiring the parties to

register after having already obtained Court approval would render unworkable the proposed Stipulation, which anticipates Plaintiff being able to sell shares immediately. *Id.*

### 2. Section 3(a)(10) Participants Are Not Dealers.

■ "Reselling the freely tradeable shares acquired in a court approved Section 3(a)(10) exchange does not make the person receiving the shares a dealer that would be required to register." *Oceana Capitol,* 150 F.Supp.3d at 1225, 2015 WL 9239767, at \*5; *see also ScripsAmerica,* 56 F.Supp.3d at 1165 (recipient of Section 3(a)(10) exchange shares, "was permitted to sell the shares however it pleased; it was not illegal to sell freely transferrable shares in a publicly traded company").

■ Because Plaintiff "is a sophisticated investor and not in need of the protections afforded by registration ... this case involves no public offering, and thus no distribution," and absent a distribution, there "cannot be an underwriter." *Ackerberg,* 892 F.2d at 1337. Even if the parties were considered underwriters, they would nevertheless not be dealers. *See Oceana Capitol,* 150 F.Supp.3d at 1225–27, 2015 WL 9239767, at \*5 (an underwriter is not a dealer); *Ackerberg,* 892 F.2d at 1335 (person who was potentially an underwriter involved in a distribution was nevertheless "clearly" not an underwriter); *Acqua Wellington N. Am. Equities Fund, Ltd,* 2001 WL 1230266, at \*5 (S.E.C. No–Action Letter Oct. 11, 2001) ("a person's status as an underwriter" does "not result in that person being deemed a dealer").

■ Under both the Securities Act and the Exchange Act, only a person engaged in the business of dealing may be considered a dealer. *See* 15 U.S.C. § 78c(a)(5)(A); 15 U.S.C. § 77b(a)(12); *S.E.C. v. Big Apple Consulting USA, Inc.,* 783 F.3d 786, 809 (2015) (investor relations company whose livelihood was based on reselling shares received from its clients as compensation for services provided in exchange for stock was a dealer). Dealers do not include persons, "who buy and sell securities for their own account as ordinary traders." *In re Gordon Wesley Sodorff, Jr.,* 50 S.E.C. 1249, 1992 WL 224082, at \*5 (Sept. 2, 1992). There is a broad exemption for investors and traders not engaged in the regular business of providing dealer services to others. *See* 15 U.S.C. § 78c(a)(5)(B); *Oceana Capitol,* 150 F.Supp.3d at 1225–27, 2015 WL 9239767, at \*5; *see also Nat'l Council of Sav. Institutions,* 1986 WL 67129, at \*2 (S.E.C. No-Action Letter July 27, 1986) ("the staff has consistently taken the position that a person who buys and sells securities for his own account in the capacity of a 'trader' is generally not considered to be 'engaged in the business' of buying and selling securities and consequently, is not deemed to be a 'dealer' under the Act"). "A person who buys and sells securities for his own account in the capacity of a trader or individual investor is generally not considered to be engaged in the business of buying and selling securities and consequently, would not be deemed a dealer." *Oceana Capitol,* 150 F.Supp.3d at 1226, 2015 WL 9239767, at \*5; *see Burton Sec.,* 1977 WL 10680, at \*1 (S.E.C. No-Action Letter Dec. 5, 1977).

■ To be considered a dealer, a person must be engaged in the securities business, such as soliciting investor clients, handling investor clients' money and securities, rendering investment advice to investors, and sending investors subscription agreements for their review and execution. *See Gordon Wesley Sodorff,* 1992 WL 224082, at \*5; *Oceana Capitol,* 150 F.Supp.3d at 1225–27, 2015 WL 9239767, at \*5. These factors, many of which "are

equally indicative of broker activities," "distinguish the activities of a dealer from those of a private investor or trader." *Gordon Wesley Sodorff,* 1992 WL 224082, at fn. 27. Plaintiff does not provide advice or services to other investors, but is instead acting in its own best interests as an investor and a party in litigation, and as such cannot be considered a dealer. *Id.*

### 3. Plaintiff Is Exempt from Registration as a Foreign Broker–Dealer.

■ As a Belize international business company, Plaintiff is exempt from Exchange Act registration as a foreign broker-dealer. *See Oceana Capitol,* 150 F.Supp.3d at 1226, 2015 WL 9239767, at *5 ("Plaintiff is exempt from registration as a foreign broker-dealer, because the claim acquisition, settlement and exchange submitted to the court for approval will be effected by plaintiff selling defendant's shares through plaintiff's brokerage accounts at registered broker-dealers."); 17 C.F.R. § 240.15a–6(a)(4)(i) ("A foreign ... dealer shall be exempt from the registration requirements of sections 15(a)(1) or 15B(a)(1) of the [Exchange] Act to the extent that the foreign ... dealer [e]ffects transactions in securities with or for ... [a] registered broker or dealer, whether the registered broker or dealer is acting as principal for its own account or as agent for others.").

Plaintiff will resell Defendant's shares only through registered broker-dealers. *See* Stipulation, Exhibit 1, p.8, ¶ 15 ("Plaintiff will resell the shares only through registered broker-dealers."). Because Plaintiff is exempt from the registration requirements under Section 15(a)(1) to the extent that it effects transactions with a registered broker-dealer, the resale of shares through registered-broker dealers cannot be considered in determining whether Plaintiff is required to register under the Exchange Act. *See Oceana Capitol,* 150 F.Supp.3d at 1225–27, 2015 WL 9239767, at *3; 17 C.F.R. § 240.15a–6(a)(4)(i). Accordingly, Plaintiff is not required to register as a dealer in order to sell the freely tradeable shares it acquires from Defendant in a court-approved Section 3(a)(10) exchange.

### ORDER

In consideration of the foregoing Findings of Fact and Conclusions of Law, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. The Stipulation, incorporated herein by reference, is adopted and approved in its entirety;

2. Plaintiff owns and holds bona fide outstanding securities, claims, and property interests, the terms and conditions of the issuance and exchange for shares of Common Stock of Defendant, as set forth in the Stipulation, are approved after a hearing upon the fairness of such terms and conditions at which Plaintiff, the only person to whom it is proposed to issue securities in such exchange, had the right to appear;

3. Defendant shall forthwith issue to Plaintiff unrestricted and freely tradable shares of Defendant's Common Stock as set forth in the Stipulation, which shares shall be exempt from all provisions of the Securities Act pursuant to Section 3(a)(10) thereof;

4. Plaintiff may immediately resell all of the shares on the public markets without any restriction and without any registration under either the Securities Act or the Securities Exchange Act of 1934, as amended; the parties are not required to file a registration statement under Section 5 of the Securities Act, and the parties and their affiliates are not required to register as broker-

dealers under Section 15 of the Exchange Act as a result of the acquisition, exchange or resale of the shares; and

5. The Court shall retain jurisdiction to enforce the terms of this Order by application or motion.

**SO ORDERED** on this **14th day** of **April, 2016.**